

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed April 10, 2006                      United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| MONICA ANN RODRIGUEZ, | § | CASE NO. 05-50625-RLJ-7 |
| Debtor | § | |
| SECURITY BANK, IDALOU, TEXAS, a branch of Security Bank, Ralls, Texas, | § | |
| Plaintiff | § | |
| v. | § | ADVERSARY NO. 05-5025 |
| MONICA ANN RODRIGUEZ, | § | |
| Defendant | § | |

## **MEMORANDUM OPINION**

Security Bank, Idalou, Texas, plaintiff, filed this adversary proceeding seeking the Court's

determination, under section 523(a)(2)(A) and (B) of the Bankruptcy Code, that the debt owed to

the bank by Monica Rodriguez, defendant and debtor, should be declared nondischargeable. Trial was held on February 22, 2006, and March 22, 2006. The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

## Statement of Facts

On Monday, March 28, 2005, defendant Monica Rodriguez and her husband Jonathan Rodriguez signed a Note, Disclosure and Security Agreement (the "Note and Security Agreement") representing a $16,000 loan made to them by Security Bank. Pl. Ex. 7. The Note and Security Agreement provides for sixty monthly payments of $333.42 each, with the first payment being due May 12, 2005. To secure the loan, the Rodriguezes granted the bank a security interest in a 2004 Mazda sedan. On the same day, the Rodriguezes also signed a separate document which states as follows:

> Received from the Security Bank, Idalou, Texas, in trust the following specified documents described herein below, and in consideration therefore, we hereby agree to hold said documents in trust for said bank and as said bank's property and to deliver over to the said Security Bank or it's [sic] assigns the proceeds of the sale of said documents (or property) described herein below; the delivery herein being temporarily made to us for convenience only without notation or without giving us any title to the documents or the property they represent, except as a trustee and agent for said bank or to receive the proceeds thereof for the account of said bank. The said bank may at any time cancel this trust by taking possession of said documents or the proceeds of such of the same as may then have been sold, wherever, the said documents or the proceeds thereof may be found.
>
> We hereby agree to deliver said documents or to pay the proceeds arising from the sale of property to said bank on or before 3:00 o'clock, on the 12 day of April, 2005.

Pl. Ex. 8. This document, which the bank calls a "trust receipt," was intended to obligate the

Rodriguezes to provide the certificate of title on the Mazda by April 12, 2005. The Rodriguezes actually purchased the Mazda on Friday, March 25, 2005. The purchase was financed with Bank of America. The Rodriguezes used the $16,000 in loan proceeds from Security Bank to pay off Bank of America and thereby effectively refinanced the debt on the Mazda.

The Rodriguezes did not deliver the title to Security Bank by April 12, 2005, as contemplated by the trust receipt. Bank of America released its lien against the Mazda on April 13, 2005. Pl. Ex. 11. On April 22, 2005, Troy Stegemoeller with Security Bank sent a letter to the Rodriguezes thanking them for making the first payment under the Note and Security Agreement and reminding them that the bank still needed "proper evidence of title on [the] car." Pl. Ex. 9. Around this same time, the Rodriguezes separated and the Mazda was left with Monica. On May 2, 2005, Troy Stegemoeller, again on behalf of the bank, which had still not received evidence of title, sent a second letter to the Rodriguezes warning them that the debt under the Note and Security Agreement may be declared in default and the maturity accelerated because of their failure to provide the title. Pl. Ex. 10.

Monica Rodriguez filed her chapter 7 case on May 19, 2005. She testified that she actually received the car title a "week or two" prior to her bankruptcy filing. She also testified that upon receipt of the title she called the bank and talked to a "Ms. Torres" who advised her to have the bank listed as lienholder on the title and delivered to the bank. Monica Rodriguez gave the title to her bankruptcy attorney, Jeff Conner. At some point after the bankruptcy filing, both the Mazda and the certificate of title were delivered to the chapter 7 trustee, Floyd Holder.

By letter dated June 9, 2005, from Monica Rodriguez to Troy Stegemoeller, she advised the bank that her husband Jonathan had left her on April 14 and that she could no longer afford

3

the car. Floyd Holder, the trustee, having received the title and noting that it reflected there were no liens against the car, made plans to have the car sold at auction. Prior to the auction, however, the auctioneer contacted Holder to inform him that he had a "hot" buyer who was willing to pay $10,000 on the spot for the Mazda. Holder authorized the sale and the car was sold. Holder did not incur any expense, i.e., a commission, on the sale. He also did not obtain court approval for the sale. Both Monica and Jonathan Rodriguez are reflected on the title as owners of the Mazda. Pl. Ex. 11. Holder has filed a motion to approve the sale nunc pro tunc, to which the bank has objected and which is presently pending before the Court.

## Discussion

Security Bank contends its debt should be declared nondischargeable under section 523(a)(2)(A) and (B) of the Bankruptcy Code, which states as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> . . .
> >  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> > > (B) use of a statement in writing–
> > > > (i) that is materially false;
> > > > (ii) respecting the debtor's or an insider's financial condition;
> > > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > > > (iv) that the debtor caused to be made or published with intent to deceive;

Security Bank bears the burden of proof and must establish each of the required elements of its claim under section 523(a) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279 (1991); *In re Acosta*, 406 F.3d 367 (5th Cir. 2005).

Subsection (B) is not implicated as there is no evidence in this case of any "statement in writing . . . respecting the debtor's financial condition." Security Bank's claim is based on subsection (A). The Fifth Circuit has recently stated that for a debt to be declared nondischargeable under section 523(a)(2)(A), the creditor must show that (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. *In re Acosta*, 406 F.3d 367, 371 (5th Cir. 2005). An intent to deceive may be inferred from a reckless disregard for the truth or the falsity of a statement combined with the sheer magnitude of the resulting misrepresentation. *Id.* In addition, silence as to material facts can constitute a false representation. *Id.*

Security Bank contends that Monica Rodriguez represented to the bank that it would have a "first lien on the collateral." Monica Rodriguez's failure to deliver the certificate of title to the bank with the bank reflected as lienholder makes her representation false, according to the bank.

The Note and Security Agreement granted Security Bank a security interest in the Mazda. It is questionable whether the so-called trust receipt constitutes a representation by Rodriguez that she would provide the bank with a first lien against the car. What Security Bank really wants is a valid *perfected* lien against the car. As a practical matter, it strikes the Court as unusual and outside normal procedures for a lender, when advancing for the purchase of a car, to place on its customer the obligation of obtaining the title and having the lender designated as lienholder on the title. Despite this, the Court is satisfied that Monica Rodriguez, by the Note and Security Agreement, the trust receipt, and discussions had with the bank representatives at the time the

loan was obtained effectively promised to deliver a good certificate of title to the bank. It is also safe to assume that the bank actually and justifiably relied upon this representation and sustained a loss as a result of its reliance. As noted, the chapter 7 trustee has sold the car and, assuming clear title has been or can be delivered to the purchaser, the bank has effectively lost its security interest in the car.

The real issue, however, is whether Monica Rodriguez's representation was false at the time it was made, March 28, 2005. The funds from the Security Bank loan were indeed used to pay off Bank of America. Bank of America released its lien on April 13, 2005. The only evidence before the Court addressing when Monica Rodriguez received the title is her testimony that she did not receive the title until a "week or two" prior to the bankruptcy filing. She ultimately delivered the title to her attorney. No explanation is provided as to why it was not delivered to the bank. Regardless, the Court cannot attribute any ill-will or deceit on Monica Rodriguez's part by her simply turning the title over to her bankruptcy attorney. More importantly, the Court cannot conclude that, at the time she signed the Note and Security Agreement and the trust receipt, she had no intention of delivering the certificate of title to the bank. The representation was neither false nor made with intent to deceive at the time it was made. Having not satisfied all elements of its claim of nondischargeability under section 523(a)(2)(A), the relief requested by Security Bank will be denied. The Court will prepare an appropriate order.

### End of Order ###